IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ANDRE M. KELLY, #N-23078,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **CASE NO. 11-cv-0437-JPG** |
| | ) |
| **C KNOP**, *et al.,* | ) |
| | ) |
|     **Defendants.** | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Andre Kelly brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on incidents that occurred while he was housed at Lawrence Correctional Center ("Lawrence") in Sumner, Illinois. Plaintiff is currently on parole and living in a halfway house in Chicago, Illinois. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be

granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**Factual Summary**

Plaintiff alleges that on April 30, 2011, Defendant C/O C. Knop placed him on 3A upper wing with inmate Harris, #R22278, as his cell mate, despite the fact that Plaintiff had a medical permit for low deck and low bunk. Although inmate Harris also had a low bunk permit, Defendant Knop told inmate Harris to "get the fuck on the top bunk," effectively placing Plaintiff on the lower bunk (Doc. 1, p. 5). Plaintiff claims that Defendant Knop knew that both he and inmate Harris had low bunk medical permits. According to the complaint, inmate Harris became violent and threatening toward Plaintiff from that day on.

On May 7, 2011, at 4:30 a.m., inmate Harris told Plaintiff that he was in Harris's bunk, and

that Harris was going to kill himself or someone else. Plaintiff pushed the emergency button in the cell several times, but no one ever responded. When Plaintiff got into his bunk, inmate Harris jumped down from the upper bunk, began punching Plaintiff in the face repeatedly, knocking Plaintiff's front tooth out, splitting Plaintiff's gums, and knocking Plaintiff to the floor. After attacking Plaintiff, inmate Harris yelled for a correctional officer to come to the cell. Defendant C/O Kessler responded, but when Plaintiff told him what happened, he refused to provide medical attention for Plaintiff as requested.

The next day, Plaintiff stopped a nurse walking by his cell to tell her what had happened. She advised Plaintiff to fill out a nurse sick call slip, which he did, twice. At an undisclosed time, Plaintiff showed his injuries to Defendant Lieutenant Dickerson, who replied that he had not been apprised of the May 7, 2011, incident. Plaintiff then told Defendant Dickerson what had happened. According to the complaint, Defendant Dickerson then tested Plaintiff's emergency button, which worked at that time, but no one responded. Defendant Dickerson told Plaintiff that he would get him medical attention and send the prison dentist.

Plaintiff filed three emergency grievances over the incident, two of which are attached to the complaint (Doc. 1, pp. 10-13). It is not clear from the complaint whether these grievances were responded to. Plaintiff is requesting maximum compensatory and punitive damages.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into three (3) numbered counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of the Court. The designation of these counts in no way constitutes an opinion as to each count's merit.

**Count 1 - Failure to Protect from Inmate Assault**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a failure to protect claim, he must show he was incarcerated under conditions posing a substantial risk of serious harm, and the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).

When a plaintiff has been attacked by another inmate, if he is to succeed on a failure to protect claim, he must show the defendants knew there was a substantial risk that those who attacked plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

> A prisoner's interest in safety does not lead to absolute liability, however, any more than the state is the insurer of medical care for prisoners . . . . [T]he eighth amendment has a mental component. The eighth amendment addresses only punishment. Whether an injury inflicted by fellow prisoners . . . is "punishment" depends on the mental state of those who cause or fail to prevent it. . . . Other mental states, including total indifference to risks, come so close to deliberateness that courts treat them alike. Thus judges speak . . . of "deliberate indifference" or "recklessness" as the functional equivalent of intent. Although there are shadings of meaning here, total unconcern for a prisoner's welfare – coupled with serious risks – is the

functional equivalent of wanting harm to come to the prisoner.

*McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

In the instant case, Plaintiff attaches a grievance dated May 10, 2011, wherein he states that the "staff and unit supervisor of segregation A wing" were aware that inmate Harris had physically attacked his cell mates on three prior occasions (Doc. 1, p. 12). Plaintiff also states in the May 10, 2011, grievance that inmate Harris had "previously been warning officers that he would hurt himself or someone else." *Id*. Plaintiff does not identify any of the officers or staff by name. Based on these facts, it is possible that placing Plaintiff in a cell with inmate Harris could have posed a substantial risk of serious harm to the Plaintiff. The remaining question is whether any of the defendants were aware of a specific, impending, and substantial threat to his safety and, if so, whether any of the defendants acted with the requisite deliberate indifference to that danger.

### Defendant Knop

In the complaint, Plaintiff alleges that C/O Knop placed both himself and inmate Harris in the same cell, despite the fact that Defendant Knop knew that both inmates had low bunk permits for medical reasons. Plaintiff does not plead any facts in the complaint itself or in the attached grievances indicating that Defendant Knop was aware of inmate Harris's previous attacks or threats of harm to himself or others. The only indication of knowledge on Defendant Knop's behalf is contained in a letter to the Clerk of Court dated May 22, 2011, that Plaintiff attaches to his complaint (Doc. 1, p. 15). Liberally construed, it appears from this letter that Plaintiff is alleging that Defendant Knop knew that inmate Harris was violent and had previously beaten two of his cell mates. *Id*. However, Plaintiff does not allege anywhere in the complaint that Defendant Knop had

any knowledge of inmate Harris's threats to harm himself or others when he placed Plaintiff in the cell with him. While placing two inmates with low bunk permits in the same cell may have constituted negligence, this is not enough to state a claim against Defendant Knop for failure to protect. Accordingly, Defendant Knop will be dismissed without prejudice.

### Defendant Kessler

In a grievance dated May 9, 2011, Plaintiff states that inmate Harris told Defendant Kessler that he was going to hurt himself or someone else and also that Defendant Kessler knew of Harris's violent history (Doc. 1, pp. 10-11). Plaintiff does not state when Defendant Kessler obtained this information, but Plaintiff also states in that grievance that Defendant Kessler "has a custom of indifference and he constantly ignores any correspondence from inmates who have problems, questions, or grievances." *Id*. While Plaintiff alleges facts showing that Defendant Kessler may have known about inmate Harris's violent tendencies and threats of harm, Plaintiff does not allege that Defendant Kessler was involved in any way with the cell placement of Plaintiff. Therefore, the complaint fails to state a claim for failure to protect against Defendant Kessler.

Plaintiff's failure to protect claims against Defendants Knop and Kessler will be dismissed, without prejudice.

### Count 2 - Deliberate Indifference to Medical Needs

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional

denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The Seventh Circuit considers the following to be objective indicia of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Additionally, a condition so obvious even a lay person would easily recognize the need for a doctor's attention is considered a "serious" medical need. *Id.*

To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837.

**Defendant Kessler**

Plaintiff states that after he was attacked by his cell mate on May 7, 2011, he requested

medical attention from Defendant Kessler (a correctional officer), but was denied. Plaintiff had been punched in the face and eventually "knocked out on the floor" (Doc. 1, p. 6). As a result of the attack, Plaintiff's front tooth was knocked out, his gums were split open, and he sustained a head injury when he hit the floor. Plaintiff states that there was blood everywhere after the attack. Plaintiff further asserts that because he suffers from grand mal seizures, the blow to his head could have killed him. Once Plaintiff did see the dentist, he was advised that more teeth would have to be removed because they were crooked and loose. Based on these facts, Plaintiff has shown that he suffered from a serious medical need. The question becomes whether Defendant Kessler was deliberately indifferent to this serious medical need.

In this case, Plaintiff was attacked and sustained obvious injuries. According to the complaint, when Defendant Kessler arrived at the cell, Plaintiff was "knocked out on the floor" and there was blood everywhere. When Plaintiff awoke, he told Defendant Kessler what happened, but the Defendant ignored Plaintiff, refused to give him medical attention, and left him bleeding. According to these facts, Defendant Kessler was aware of Plaintiff's serious injuries, but failed to address his need for medical care. Accordingly, Plaintiff's claim against Defendant Kessler for deliberate indifference shall receive further review.

**Count 3 - Due Process - Grievance**

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982).

### Defendant Ryker

After the incident, Plaintiff filed three emergency grievances. Plaintiff alleges that Defendant Warden Ryker "constantly ignores and refuses my grievances" (Doc. 1, p. 6).

Plaintiff, like many other inmates, seems to think that any prison employee who knows (or should know) about his problems has a duty to fix those problems. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). Therefore, even if Plaintiff's statement that he complied with the emergency grievance procedure three times without response was true, this would not give rise to a due process violation.

Accordingly, Count 3, and Defendant Ryker, must be dismissed with prejudice.

### Defendant Dickerson

Plaintiff names Lieutenant Dickerson as a defendant in this action, but Plaintiff makes no allegations against this Defendant that might state a claim for relief. In fact, it appears from the face of the complaint that Defendant Dickerson was the only person who attempted to help the Plaintiff. According to the complaint, Defendant Lieutenant Dickerson was the first person to seek medical attention for the Plaintiff, at an unspecified date. Defendant Dickerson also tested out the emergency button in Plaintiff's cell and discovered that it was in working order.

Although Defendant Lieutenant Dickerson holds a supervisory position at the prison, he cannot be held liable in a § 1983 action merely because he holds such a position. As stated above, the doctrine of respondeat superior does not apply to § 1983 actions, so that in order to be liable a defendant must be alleged to be personally responsible for the constitutional violation. *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Where a defendant has been alleged to have directed the conduct or to have given knowing consent to the conduct which caused the constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation. *Chavez*, 251 F.3d at 652; *McPhaul v. Bd. of Comm'rs of Madison Cnty.*, 226 F.3d 558, 566 (7th Cir. 2000). A defendant in a supervisory capacity may then be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).

Plaintiff's complaint contains no allegations against Defendant Dickerson that would either indicate he was personally responsible for the attack on Plaintiff, or that he knew about the attack or threat to Plaintiff's safety and directed or condoned the failure of subordinates to correct the constitutional violations. In fact, according to the complaint, Defendant Dickerson stated that no one told him about the May 7, 2011, incident (Doc. 1, p. 6). Therefore, Defendant Dickerson shall be dismissed from this action without prejudice.

**John Doe Defendant(s)**

Finally, Plaintiff lists two additional Defendants on page 2 of the complaint that are not listed

on the docket sheet: Defendant "Seg Administration Major" and "Other Unknown Officer." The Clerk is **DIRECTED** to add these Defendants to the docket sheet in this case.

Additionally, Plaintiff states in the body of his complaint that he will forward all "John Doe officers and supervisors to this Court at a later date" (Doc. 1, p. 7). Plaintiff filed the instant complaint on May 25, 2011, but has failed to provide the Court with this additional information to date.

Plaintiff does not make any specific allegations in his statement of claim against any of the possible John Doe defendants. Instead, he states that this incident would not have happened if the "segregation supervisors" would have "investigated" (Doc. 1, p. 7). He also states in the attached May 10, 2011, grievance that "the staff and unit supervisor of Seg A wing" knew that he had a low bunk and low tier status and also knew that inmate Harris had a violent history of attacking his cell mates. The Court is unable to ascertain what claims, if any, Plaintiff has against the potential John Doe Defendants.

The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, where a plaintiff has not included a defendant in

his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

Because Plaintiff has not listed Defendants Seg Administration Major and Other Unknown Officer elsewhere in his complaint, he has not adequately stated claims against these individuals, or put them on notice of any claims that Plaintiff may have against them. For this reason, Defendants Seg Administration Major and Other Unknown Officer will be dismissed from this action without prejudice. If Plaintiff identifies these defendant(s) and the specific claims he alleges against them at a later date, the Court may entertain a motion to amend.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** fails to state a claim upon which relief may be granted, and is **DISMISSED without prejudice**. **IT IS FURTHER ORDERED** that **COUNT 3** fails to state a claim and is **DISMISSED with prejudice**. Defendants **KNOP, DICKERSON**, **SEGREGATION ADMINISTRATOR MAJOR,** and **UNKNOWN OFFICER** are **DISMISSED** from this action **without prejudice**, and Defendant **RYKER** is **DISMISSED** from this action **with prejudice** .

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendant **KESSLER** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of

the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Philip Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)."

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED:   May 21, 2012


                                                            *s/J. Phil Gilbert*
                                                            **United States District Judge**